Louise MAXEY *v.* TYSON FOODS, INC.,
Tynet Corporation, and Second Injury Fund

99-637                                    18 S.W.3d 328

Supreme Court of Arkansas
Opinion delivered May 18, 2000
[Petition for rehearing denied June 15, 2000.]

*Stephen M. Sharum*, for appellant.

*Bassett Law Firm*, by: *Earl Buddy Chadick*, for appellee Tyson Foods, Inc./Tynet Corporation.

*David L. Pake*, for appellee Second Injury Fund.

W.H. "DUB" ARNOLD, Chief Justice. Louise Maxey appealed a decision of the Workers' Compensation Commission holding that she was not permanently and totally disabled, but that she was entitled to benefits for a 35 percent wage-loss disability. The Second Injury Fund cross-appealed, arguing that the Commission erred in awarding appellant wage-loss benefits on a scheduled injury. Appellee Tyson Foods took the position that the Commission did not err in finding that appellant failed to prove permanent and total disability, but did not address the Second Injury Fund's argument.

The Court of Appeals disagreed with appellant on her claim of disability degree and affirmed the Commission. *Maxey v. Tyson, Inc.*, 66 Ark. App. 301, 991 S.W.2d 624 (1999). Further, the court agreed with cross-appellant, the Second Injury Fund, that since Ark. Code Ann. § 11-9-521(g) (Supp. 1997) exempts the employer from paying any wage-loss disability for a scheduled injury in the absence of permanent total disability, it also exempts the Second Injury Fund. In other words, a claimant who is not entitled to wage-loss disability benefits from his employer or its insurance carrier cannot be entitled to benefits from the Second Injury Fund. *Id.*

Appellant/cross-appellee, Louise Maxey, then petitioned this Court for review of the decision of the Court of Appeals that reversed on cross-appeal the decision of the Full Commission that she was entitled to wage-loss disability on a scheduled injury pursuant to Ark. Code Ann. § 11-9-525 (Supp. 1997). Ms. Maxey contends that this petition involves an issue of first impression in this State. We granted appellee's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e).

During oral argument of this matter, appellant asked this court to consider the Commission's entire decision, including its finding that she was not permanently and totally disabled. This court has the discretion to review an appeal decided by the Court of Appeals on application by a party. Ark. Sup. Ct. R. 1-2(e). Moreo-

ver, the factors we consider in determining whether to grant a petition to review neither control nor fully measure our discretion. *See id.; see also Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 336 Ark. 55, 984 S.W.2d 410 (1999). Accordingly, although Ms. Maxey initially requested reversal only in regard to the issue of the liability of the Second Injury Fund, we will consider the case on petition for review in its entirety.

*Standard of Review*

■ ■ We have held that upon a petition for review, we consider a case as though it had been originally filed in this court. *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000); *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.; Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Pickett*, 336 Ark. at 518, 988 S.W.2d at 5; *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

*Facts and Procedural History*

At the time of the hearing in 1997, Ms. Maxey was sixty-eight years old, had a tenth-grade education, no vocational training, and her past work experience consisted of working on a farm, in a flower shop, as a sales clerk in a clothing store, and for appellee Tyson Foods. Ms. Maxey testified that she began working for Tyson in 1984 and performed various jobs. She had been on the "debone line pulling chicken tenders," a floor person cleaning up, assisting on the production line, and keeping load records. On January 27, 1989, Ms. Maxey sustained a compensable injury to her lumbar spine, underwent two surgeries, and was left with a 12 percent physical impairment to the body as a whole.

When Ms. Maxey was released to return to work after her back injury, she was restricted from bending and lifting, and she was

placed on the "shell line." She said a maintenance man made a stool especially for her so she could sit or stand as she needed. She also wore a back brace and took pain medication as needed. She said, in general, she did quite well that way.

In 1995, while still employed with Tyson, Ms. Maxey developed bilateral carpal tunnel syndrome, and she has had two surgeries on each wrist. After the most recent surgery on her right wrist, Ms. Maxey developed an infection that has never completely healed. When she was released to return to work on May 14, 1997, with a 15 percent impairment to her hands, Ms. Maxey was told by the plant manager that there was no job available within her restrictions, and she was terminated as of May 30, 1997.

Ms. Maxey testified that she then attempted to work as a Wal-Mart "greeter," but being on her feet all day and having to pull baskets for customers caused her severe pain and she had to quit. She testified that she can no longer squeeze anything, open a jar, peel a potato, push a vacuum, lift any cookware, or clean her house. Her hands stay sore and hurt constantly. The administrative law judge found Ms. Maxey to be permanently and totally disabled.

The Commission reversed, and reduced Ms. Maxey's disability from total to 35 percent, based upon her compensable injuries together with her age, education, and work experience, along with all other matters which may be considered in assessing wage loss. It found that she had skills transferable to the "service sector" of employment where she had experience, and that there were numerous jobs where her restrictions of sitting or standing as needed could be accommodated. The Commission dismissed Ms. Maxey's unsuccessful attempt to work at Wal-Mart as insufficient to prove a total inability to earn meaningful wages.

## Merits of the Case

On appeal, Ms. Maxey argues that the Commission's analysis was flawed and that reasonable minds could not reach the decision that the Commission reached. We agree and hold that the Commission's decision to reduce Ms. Maxey's disability from permanent and total to 35 percent was in error and must be reversed.

The claimant, Ms. Maxey, is now a seventy-year-old woman, who possesses only a tenth-grade education and no vocational

training. Ms. Maxey's doctor, Dr. E.F. Still, opined that "obviously she is not going to be able to do anything as far as repetitive work is concerned and [doubts] seriously if she is going to be able to do anything that has anything of substance such as heavy lifting, etc." Although Ms. Maxey did attempt to return to work at Tyson, she was told that there was no work available within her restrictions. As stated previously, she thereafter attempted to work for Wal-Mart as a "greeter," but was unable to remain on the job for any appreciable length of time due to the problems with her back and hands.

Ms. Maxey testified that currently her days consist of watching television, eating at her cousin's café, and driving around town. She is unable to perform housework and relies on her daughter to do it for her. She further testified that she occasionally uses prescription pain medication three to four times per day and uses over-the-counter sleep-aids in order to ease the pain she suffers.

█ In short, when taking into consideration the claimant's limited education, employment skills, and her relatively advanced age, coupled with the effects of no less than six surgeries (two to the back, and four to the hands), which she underwent in an attempt to return to work, in addition to the testimony of her doctor, we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission, finding that Ms. Maxey was anything less than permanently and totally disabled. For these reasons, we hereby reverse the Full Commission's decision to reduce Ms. Maxey's disability status from permanent and total to 35 percent. Likewise, the Court of Appeals decision in *Maxey v. Tyson, Inc.*, 66 Ark. App. 301, 991 S.W.2d 624 (1999), affirming the Full Commission, is hereby reversed. As such, the cross-appeal by the Second Injury Fund is, therefore, moot and need not be addressed, particularly since the attorney for the Second Injury Fund conceded, during oral argument of this case, that the Second Injury Fund would be liable in the event this court determined that Ms. Maxey was permanently and totally disabled.

Reversed.