Robert VANDERPOOL *v.* Jean PACE, Mayor of the City of Mammoth Spring; Jack Haney, Carol Howell, James Mills, and Bruce Green, Aldermen of the City of Mammoth Spring

02-73 97 S.W.3d 404

Supreme Court of Arkansas
Opinion delivered February 6, 2003

[Petition for rehearing denied March 6, 2003]

*Larry J. Steele*, for appellant.

*J. Denham,* Arkansas Municipal League, and *William T. Hass,* Mammoth Spring City Attorney, for appellees.

DONALD L. CORBIN, Justice. Appellant Robert Vanderpool was formerly the city marshal of the City of Mammoth Spring. He filed suit in the Fulton County Circuit Court against Appellees Jean Pace, mayor of Mammoth Spring, and four city aldermen, Jack Haney, Carol Howell, James Mills, and Bruce Green. In his complaint, Appellant asserted that the city owed him overtime pay for a period of three years, pursuant to certain provisions of the city's municipal code. The trial court granted summary judgment in favor of the city officials, and this appeal followed. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(6), as it involves the interpretation of a city ordinance. We find no error and affirm.[1]

Appellant's complaint, filed on April 26, 2000, alleged that he was employed as the city marshal from July 1, 1995, to June 30, 1998. He asserted that as city marshal, he was required to have a police-department telephone in his home and was required to be on call at home twenty-four hours a day, seven days a week. He asserted further that during his employment, he also performed duties relating to the city's fire department, specifically, that he maintained a separate telephone line in his home in order to receive calls for the fire department. He alleged that the time he spent at home was compensable, because the restrictions placed on him prevented him from using the time for personal pursuits, as provided under the Fair Labor Standards Act (FLSA). Finally, he claimed that he was entitled to $25,572.67 in overtime pay and $94,510.18 for the time he spent on call at home.

Appellees filed an answer on June 21, 2000, denying any wrongdoing and all material allegations made by Appellant. On that same date, Appellees also filed a notice stating that the case had been removed to federal court, due to the claim under the FLSA.

---

[1] This case was first submitted to this court last year; however, because the addendum was deficient, we returned the case to Appellant to comply with Ark. Sup. Ct. R. 4-2. *See Vanderpool v. Pace,* 350 Ark. 460, 87 S.W.3d 796 (2002) (*per curiam*).

On March 19, 2001, the United States District Court, Eastern District of Arkansas, Northern Division, entered an order granting Appellees' motion for summary judgment and dismissing Appellant's federal claims. The district court dismissed the FLSA claims on the ground that the overtime provisions under the Act specifically exempt those agencies that employ less than five law enforcement personnel. At the time of Appellant's employment as marshal, the city employed fewer than five law enforcement personnel. The district court found further that even if Appellant's FLSA claims were valid, he would only be entitled to compensation for the period of April 26, 1998, to June 30, 1998, as the statute of limitations under the Act is two years. In an order issued on March 30, 2001, the district court remanded Appellant's state claims to the Fulton County Circuit Court.

Following remand, both Appellant and Appellees filed motions for summary judgment. In support of their motion for summary judgment, Appellees stated that under the city's ordinances, Appellant, as head of the police department, was not entitled to receive overtime pay. Appellees also stated that even if he was entitled to overtime pay, Appellant could only collect for the period of April 26, 1997, through June 30, 1998, as the statute of limitations on his claim is three years, pursuant to Ark. Code Ann. § 16-56-105 (1987). In a letter order entered on October 24, 2001, the trial court granted Appellees' motion for summary judgment and denied Appellant's motion. This appeal followed.

■ At the outset, we note that summary judgment, although no longer viewed as a drastic remedy, is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Monday v. Canal Ins. Co.*, 348 Ark. 435, 73 S.W.3d 594 (2002); *Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002). Summary judgment is appropriate when the facts are undisputed and both sides have filed motions for summary judgment. *Id.* Here, both sides sought summary judgment based on their interpretations of the city ordinances. As such, the case was decided purely as a matter of statutory interpretation.

In construing an ordinance, we apply the same rules of construction that we apply to statutes. *Stricklin v. Hays*, 332 Ark. 270, 965 S.W.2d 103 (1998); *Tackett v. Hess*, 291 Ark. 239, 723 S.W.2d 833 (1987). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Turnbough v. Mammoth Spring Sch. Dist. No. 2*, 349 Ark. 341, 78 S.W.3d 89 (2002); *Monday*, 348 Ark. 435, 73 S.W.3d 594. The statute must be construed so that no word is left void or superfluous and in such a way that meaning and effect are given to every word therein, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no reason to resort to the rules of interpretation. *Id.* If, however, the meaning of a statute is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.*

Appellant contends that he is entitled to overtime pay because he was on call twenty-four hours a day, seven days a week. He relies on section 2.56.18 of the city's municipal code, which provides for overtime pay for certain city employees. That section provides in pertinent part:

> The standard work week for employees *other than department heads* shall be five (5) days or a total of forty (40) hours per week. Police officers shall work 50 hours per week. *Department heads and supervisors should work those hours necessary to assure the satisfactory performance of their departments*, but not less than forty (40) hours per week. *The department head or supervisor shall not be entitled to overtime pay under the provisions of this section.* [Emphasis added.]

Appellees argue that under this section, Appellant was not entitled to overtime pay because, as city marshal, he was the head of the police department. We agree. Section 2.44.02 of the city's municipal code provides in pertinent part: "*The marshal shall be the head of the department* and shall be fully responsible for the operation of the department, and the equipment of the depart-

ment." (Emphasis added.) This section plainly and unmistakably designates the city marshal as a department head.

 Appellant does not dispute the fact that he was a department head. Indeed, his complaint reflects that he was referred to as the department head. He argues, however, that for all intents and purposes, the mayor really ran things. This argument is misplaced. For purposes of this appeal, it is of no significance who actually ran the police department. Appellant's position as marshal was plainly classified under city ordinances as a department head. Because of this classification, he was not entitled to overtime pay under section 2.56.18.

 It is further of no significance that Appellant maintained in his home a separate telephone line to receive fire-department calls.[2] The record reflects that Appellant's duties were those of a law enforcement officer, not a firefighter. Indeed, in his deposition, Appellant admitted that he was never required to perform duties for the fire department. Rather, his duties, even as they related to the separate telephone line, were as a police officer. The following colloquy is illustrative.

> Q. Did the mayor ever ask you to perform duties for the fire department such as notifying firemen about fires?
>
> A. Well, as far as her personally saying, I have no recollection of her personally saying — telling me to do that, no.
>
> Q. Did the city council every instruct you that you needed to perform duties for the fire department other than what you've already told me about, sir, you needed to patrol traffic — control traffic?
>
> A. Yes, yes. At one time I had a pager that they paged me just like they did the firemen, and I went and directed traffic. And then when they started getting more firemen, I gave them the pager and then I responded from the telephone.

---

[2] In his complaint, Appellant asserts that he performed duties *relating to the fire department*. However, he does not assert that he was *required* to perform these additional duties. In contrast, the complaint does reflect that Appellant was required to maintain a police-department telephone in his home and that he was required to be on call, at home, twenty-four hours a day, seven days a week.

. . . .

Q. Did the city council ever direct you to fight fires?

A. No.

Q. Did the mayor ever direct you to fight fires?

A. No.

Based on these admissions, it is clear that any duties that Appellant performed in relation to the additional telephone line fell within the scope of his job as city marshal, not as a firefighter. As stated above, a city marshal is the head of the law enforcement department and is not entitled to overtime pay under city ordinance 2.56.18. Thus, Appellant's claim to overtime pay for his fire-department duties is misplaced.

Also misplaced is Appellant's reliance on this court's holding in *Stricklin*, 332 Ark. 270, 965 S.W.2d 103. There, North Little Rock firefighters brought suit against the city and its mayor, seeking enforcement of an initiated ordinance that required firefighters and police officers in North Little Rock to receive salaries and benefits commensurate with their counterparts in Little Rock. The trial court found that the ordinance was valid, but that it had lapsed and the city was no longer obligated to provide parity pay. This court reversed the trial court's ruling, on the ground that the ordinance did not contain a sunset provision and therefore had not expired or lapsed. We are at a loss as to how the holding in *Stricklin* aids Appellant in his lawsuit. There is no issue in the present case regarding the viability of the foregoing city ordinances. *Stricklin* is thus inapplicable to Appellant's claim.

Finally, in his brief on appeal, Appellant raises the additional argument that he is entitled to overtime pay based on the fact that the city "arbitrarily" paid him overtime pay in some instances, thereby "setting precedent." In other words, Appellant contends that the city paid him overtime pay on some occasions, and that Appellees should now be estopped from claiming that he, as a department head, is not eligible for overtime pay. We cannot reach the merits of this argument, however, as the record does not reflect that it was ever made below. This court has repeatedly stated that it will not consider an argument for the first time on

appeal. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002); *Laird v. Shelnut*, 348 Ark. 632, 74 S.W.3d 206 (2002); *Hurst v. Holland*, 347 Ark. 235, 61 S.W.3d 180 (2001).

In sum, the ordinances at issue here demonstrate that Appellant is not entitled to overtime pay. Section 2.56.18 plainly states that department heads shall not be entitled to overtime pay. Accordingly, because Appellant's position of city marshal is classified under section 2.44.02 as a "head of the department," he is not entitled to overtime pay under section 2.56.18. The trial court was thus correct in granting summary judgment to Appellees.

Affirmed.